[Cite as *In re K.L.S.*, 2010-Ohio-5520.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| K.L.S. | ) | |
| B.L.S. | ) | |
| D.S. | ) | CASE NO. 10 MA 53 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas, Juvenile Division, of Mahoning County, Ohio
Case No. 08JC57, 58, 59

JUDGMENT:    Affirmed

APPEARANCES:
For Appellee    Attorney Lori L. Shells
222 West Federal Street, 4th Floor
Youngstown, Ohio 44503

For Appellant    Attorney John A. Ams
134 Westchester Drive
Youngstown, Ohio 44515

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: November 8, 2010

DONOFRIO, J.

{¶1} Appellant, Melissa F., appeals from a Mahoning County Common Pleas Court, Juvenile Division, judgment granting permanent custody of her three children to appellee, the Mahoning County Children Services Board.

{¶2} On January 10, 2008, appellee filed a complaint alleging that appellant's three children, K.S. age six, B.S. age three, and D.S. age 1, were dependent due to a lack of medical care, lack of supervision, poor basic home conditions, and inability of the children to self protect due to their age and appellant's mental health and cognitive limitations. The trial court subsequently granted appellee temporary custody of the three children.

{¶3} A case plan was put in place for appellant on February 28, 2008. The case plan included requirements that appellant attend counseling, complete parenting classes, obtain stable housing with working utilities, and attend her children's medical appointments.

{¶4} A magistrate held an adjudicatory hearing on March 31, 2008, at which appellant stipulated to dependency. The magistrate held a disposition hearing on May 22, 2008, where all parties agreed that it was in the best interest of the children that temporary custody remain with appellee. The magistrate extended the temporary custody order on December 30, 2008, with the agreement of the parties.

{¶5} On May 19, 2009, appellee filed a motion for permanent custody of the children asserting that the children should not be placed with either parent, that an order of permanent custody was in the best interest of the children, that the children had been in its care for 12 or more consecutive months, and that appellant had failed to complete her case plan.

{¶6} The magistrate held a hearing on appellee's motion where it heard from numerous witnesses. The magistrate subsequently concluded that the children could not be placed with either parent within a reasonable time and that it was in the children's best interest to grant permanent custody to appellee. She found that appellant failed to meaningfully address any elements of her case plan including meeting the children's basic needs, successfully participating in mental health

treatment, or establishing stable, independent housing.

{¶7}  Appellant filed objections to the magistrate's decision asserting that the evidence did not support a finding that permanent custody was in the children's best interest.

{¶8}  The trial court held a hearing on appellant's objections.  It subsequently found that committing the children's permanent custody to appellee was in their best interest and that the children had been in appellee's custody for 12 or more months of a consecutive 22-month period.  In so doing, the court adopted the magistrate's decision.

{¶9}  Appellant filed a timely notice of appeal on March 25, 2010.

{¶10}  Appellant raises a single assignment of error, which states:

{¶11}  "THE TRIAL COURT LACKED CLEAR AND CONVINCING EVIDENCE TO TERMINATE APPELLANT'S PARENTAL RIGHTS."

{¶12}  Appellant argues that the trial court's decision is not supported by clear and convincing evidence.  Specifically, appellant takes issue with the court's finding that the two younger children have special medical and behavioral needs and the oldest child needs intensive counseling.  She points out that others too have had a difficult time controlling her children.  Thus, she contends that if it is difficult for others to control her children then, all else being equal, the children should be with their mother.

{¶13}  Next, appellant argues that she has complied with her case plan by obtaining housing, completing parenting classes, attending counseling, and securing social security benefits.  She further points out that once she obtained her own transportation, her attendance at counseling became more regular.

{¶14}  Appellant also asserts that her mental illness is not so severe as to prevent her from providing her children with an adequate home.  She points out that she has been attending counseling and taking her medications.  She also points to the magistrate's finding that she had no instances of trying to hurt herself since she began treatment.

**{¶15}** Finally, appellant contends that she has shown commitment toward her children, contrary to the trial court's finding. She points out that she attended most of her visits with her children. She also asserts that her attendance at parenting classes, counseling, and attempts to comply with the case plan demonstrate commitment toward her children. And she asserts that the reason she did not attend many of the children's medical appointments was because she did not schedule the appointments and was simply informed about them.

**{¶16}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208. However, this right is not absolute. *In re Sims,* 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.

**{¶17}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims,* 7th Dist. No. 02-JE-2, at ¶36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶18}** The trial court may grant permanent custody of a child to the agency if the court determines by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368.

**{¶19}** In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

**{¶20}** "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any

other person who may significantly affect the child;

**{¶21}** "(b) The wishes of the child, * * * with due regard for the maturity of the child;

**{¶22}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

**{¶23}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶24}** "(e) Whether any of the factors in divisions (E)(7) to (11)[1] of this section apply in relation to the parents and child." R.C. 2151.414(D)(1).

**{¶25}** After reviewing the evidence, the trial court found that appellant loves her children. However, it further found she is unable to properly care for them or herself and is overwhelmed by the daily tasks of parenting. The court determined that returning the children to appellant would be contrary to their best interests since appellant failed to meaningfully address elements of her case plan including meeting the children's basic needs, successfully participating in mental health treatment, and establishing stable, independent housing. It noted that although appellant completed

---

1     **{¶a}** None of the R.C. 2151.414(E)(7) through (11) factors apply here. They are:

    **{¶b}** "(7) The parent has been convicted of or pleaded guilty to [certain offenses involving the child, the child's siblings, or another child who lived in the parent's household at the time of the offense.]

    **{¶c}** "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food * * *.

    **{¶d}** "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

    **{¶e}** "(10) The parent has abandoned the child.

    **{¶f}** "(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

the parenting classes, she failed to internalize any of the parenting skills and she often asked to end her one-hour visits with her children early because she could not control them. The court found that appellant failed to remedy the problems that caused the children to be removed from her home.

{¶26} The court went on to find that placement with the father was not possible because he had little or no contact with the children. And it found that the children had been in appellee's temporary custody for 12 or more of the past 22 months, specifically since January 10, 2008.

{¶27} In considering the children's best interests, the court found that appellant's visitation has been sporadic and she has failed or refused to take the children to important medical, psychological, and educational appointments. It further found that the children's need for a secure placement is especially critical due to the fact that all of the children have some special medical and behavioral health needs. Finally, it found that appellant's severe, chronic mental and emotional health issues, including suicidal ideations and auditory hallucinations, combined with her mild mental retardation prevent her from being able to provide an adequate home for the children now or in the foreseeable future.

{¶28} The evidence supports the trial court's determinations.

{¶29} Sandra Sklenar is an occupational therapist at Easter Seals. She provides therapy to B.S. Sklenar testified that B.S. has developmental delays in his visual perception skills, fine motor skills, and postural motor skills and has a reduced attention span. (Tr. 10-11). She stated that B.S. began at Easter Seals just a few months before the hearing. (Tr. 11). Since that time, B.S. had seven therapy sessions, of which appellant attended only three. (Tr. 15-16).

{¶30} Vicky Pelleteir is an outpatient psychotherapist at the Columbiana County Mental Health Center. Appellant is one of her clients. Pelleteir testified that appellant self-referred to the center and asked for an assessment in August 2008. (Tr. 25). She stated that the assessment revealed that appellant suffers from schizoaffective disorder. (Tr. 25). She stated that she reached this diagnosis based

on appellant's report of auditory hallucinations, depression, irritability, lethargy, decreased libido, trouble making decisions, poor concentration, being easily distracted, excessive worry, and paranoia. (Tr. 26). Pelleteir stated that she referred appellant to a psychiatrist who confirmed her diagnosis and placed appellant on several medications. (Tr. 27-28).

{¶31} Pelleteir testified that appellant told her that her goals were to get her children back and stabilize her emotions. (Tr. 28). To help her reach her goals, Pelleteir scheduled appellant for 22 therapy sessions over the course of approximately a year. (Tr. 28). Of those 22 sessions, appellant attended only 11. (Tr. 28). Pelleteir stated that appellant gave various excuses for her absences including no transportation and illness. (Tr. 29). She acknowledged that once appellant obtained her own transportation her attendance improved. (Tr. 44). She further stated that she saw no progress in appellant up until the last two sessions where a "floodgate" opened and appellant seemed more motivated. (Tr. 30). And she stated that since starting her medications, appellant had not tried to hurt herself. (Tr. 36). Pelleteir also testified that appellant had told her that her roommate had several suicide attempts and was extorting money from her. (Tr. 42).

{¶32} Dr. Charles Thorne is a psychologist who assessed appellant. He stated that appellant had four psychiatric hospitalizations, two of which were for suicidal ideations. (Tr. 49). He reported that appellant suffered from depression and auditory and visual hallucinations. (Tr. 49). He stated that appellant hallucinated a man's voice telling her to do bad things and that she should hurt herself. (Tr. 50). Dr. Thorne expressed a concern that appellant's auditory hallucinations could change and tell appellant to hurt the children. (Tr. 61-62, 69). He further stated that appellant was experiencing a lot of stress associated with missing her children. (Tr. 50). And he stated that she had a feeling of persecution by appellee and she did not understand what it meant that her children suffered from failure to thrive. (Tr. 50). Dr. Thorne also had appellant complete an intelligence test, which revealed that she is mildly mentally retarded. (Tr. 51). It further revealed that appellant functions

academically at a fourth-grade level. (Tr. 53).

{¶33} Dr. Thorne diagnosed appellant with schizoaffective disorder and mild mental retardation. (Tr. 62). He recommended continued counseling and psychiatric services. (Tr. 62). He further expressed concerns about appellant's ability to parent her young children. (Tr. 63). Dr. Thorne stated he was concerned that the stresses of caring for the children could cause a deterioration of appellant's psychological problems. (Tr. 63). He additionally expressed concern over the failure to thrive diagnoses of the children and the number of injuries sustained by B.S. (Tr. 64). And he expressed concern over appellant's belief that appellee was involved with her children due to some sort of persecution rather because there was a problem. (Tr. 64).

{¶34} Dr. Thorne stated that appellant's condition was incurable, but that sometimes the symptoms could be contained. (Tr. 70). He stated that it was possible with counseling and medication for someone to control the symptoms. (Tr. 72). Dr. Thorne also stated that the facts that appellant referred herself to counseling and that she recently had a breakthrough at counseling were positive factors. (Tr. 73).

{¶35} Dorothy Staaf is the parenting class instructor at the Mahoning County Children's Services Board. She had appellant in her class. Staaf testified that appellant believed that once she completed the parenting classes, her children would be returned to her. (Tr. 83). Staaf explained to appellant that the classes were only one part of her case plan. (Tr. 83). However, she stated that appellant would express this same belief every week. (Tr. 83).

{¶36} Staaf stated that appellant completed the classes, but she would not say that appellant completed them successfully. (Tr. 85). She opined that appellant did not gain a lot of insight into what was going wrong between her and her children. (Tr. 85). Staaf was concerned that the information from class did not seem to impact what appellant did with her children. (Tr. 88). But she also stated that no one could walk into the class and get everything they needed to be a good parent. (Tr. 99).

Staaf testified that even at appellant's functioning level, she expected her to gain more from the class than she did. (Tr. 100-101). Staaf also testified that appellant loved and wanted her children. (Tr. 89).

{¶37} Ruth Parker is a family service aide who supervised appellant's visits with her children. Parker stated that during most of the visits the children are out of control and appellant has a difficult time keeping them in the room and keeping them safe. (Tr. 106). She stated the children throw toys and fight and she has to intervene to show appellant how to implement a timeout. (Tr. 106). Parker stated that appellant does not know how to utilize the things she learned in parenting classes. (Tr. 106). She opined that although appellant completed the parenting classes, she did not "successfully" complete them. (Tr. 116). She stated that one of the children kicks, hits, and bites appellant when she tries to put him in timeout and appellant does not know what to do. (Tr. 107). Parker also stated that the oldest child often wants to leave the visitation room. (Tr. 107).

{¶38} Parker did testify that appellant attended most of the visits and enjoys being with her children. (Tr. 108, 114). However, she characterized the visits as "poor." (Tr. 108). There were times, Parker stated, that appellant asked to end the one-hour visit early because she could not control the children. (Tr. 108). She opined that without supervision, appellant could not parent the children and keep them safe. (Tr. 109).

{¶39} Karey Karr is a children's services caseworker who handled appellant's case early on. Karr testified that appellant's case plan goals included counseling, obtaining clean, safe housing, parenting classes, and attending the children's appointments. (Tr. 125). She stated that appellant was unable to consistently explain what her case plan goals were and did not understand them. (Tr. 125).

{¶40} Karr testified that when she visited appellant's home before the children were removed, chaos reigned. (Tr. 127). She stated that the children were not appropriately dressed, they had free reign of the house, and they would go into the refrigerator and eat raw fish sticks and raw bacon. (Tr. 127). In an effort to help,

Karr stated that appellee provided appellant with transportation to the grocery store, paid her water bill, and brought her cleaning supplies, diapers, and baby wipes. (Tr. 128). However, Karr stated that one time when she brought cleaning supplies, B.S. put the nozzle of the cleaner in his mouth and appellant blamed Karr since she was the one who had brought the cleaning products to the house. (Tr. 128-29). On another occasion, B.S. put a tack in his mouth. (Tr. 129). Further, she stated that B.S. had a history of accidents, despite the fact that he was only two years old at the time, including almost drowning in a pool, being mauled by a dog, and knocking out his two front teeth. (Tr. 129). Karr further testified that B.S. and D.S. had both been diagnosed with failure to thrive, as had appellant's fourth child (who has a different father and is not a party to this case). (Tr. 129). Karr stated that the fourth child was a baby at the time and appellant was feeding her water instead of baby formula. (Tr. 129). Karr stated that K.S., who was six at the time, acted as the parental figure in taking care of her younger siblings. (Tr. 130).

{¶41} Karr also testified regarding what she observed after appellee removed the children. She stated that appellant was not consistent with visitation so she began requesting that appellant show up an hour early so that she would know whether or not to bring the children to visit. (Tr. 134-35). Karr testified that appellee even offered appellant bus passes so that transportation would not be an issue. (Tr. 136-37). During visits that she supervised, Karr stated that appellant had no control over the children. (Tr. 138). Karr also stated that appellant did not attend all of her counseling sessions even though appellee offered her transportation. (Tr. 139).

{¶42} Rachel Sheely is another children's services caseworker who took over appellant's case in December 2008. She stated that when she met appellant, appellant had safe and stable housing with a roommate. (Tr. 194). However, appellant moved and Sheely was not sure about her housing situation presently. (Tr. 195, 209). She had been informed that appellant was going to be evicted for failure to pay rent and her utilities were being shut off. (Tr. 195). As to counseling, Sheely stated that appellant had been sporadic in attending. (Tr. 196).

**{¶43}** Sheely further testified that appellant did not regularly attend the children's appointments. She stated that appellant failed to attend an important meeting for one of the boys regarding his needs in school. (Tr. 202). She testified that she sent letters to appellant notifying her of 32 different appointments for the children and of those 32 appointments, appellant attended only seven counseling sessions and one dental appointment. (Tr. 202, 204, 210). Sheely stated that appellant would either state she was not feeling well or simply would not show up. (Tr. 205). And she stated that some of the appointments were for serious concerns such as D.S. requiring a colonoscopy, B.S.'s IEP meeting, and a neurological consult for B.S. (Tr. 211).

**{¶44}** As to visits, Sheely testified that appellant was not able to handle the children. (Tr. 206). She stated that appellant could not redirect the children or discipline them properly. (Tr. 206). Sheely stated that one time appellant attempted to institute a timeout with B.S. but that she could not follow through to completion and ended up just yelling at him. (Tr. 206-207).

**{¶45}** Finally, Sheely opined that, due to concerns regarding appellant's lack of insight and ability to parent, it was in the children's best interest that the court grant permanent custody to appellee. (Tr. 213). And she stated that the children had been in appellee's continuous custody since January 2008. (Tr. 213).

**{¶46}** Appellee clearly met the 12 of 22 month requirement set out in R.C. 2151.414(B)(1)(d). Sheely testified that the children were in appellee's custody since January 2008. The hearing was in August 2009. Thus, the children had been in appellee's custody for 19 continuous months.

**{¶47}** Since the children had been in appellee's custody for the previous 19 months, appellee only had to demonstrate by clear and convincing evidence that it was in their best interest to grant their permanent custody to it. Based on the evidence, the trial court did not abuse its discretion in finding that the children's best interest would be served by granting permanent custody to appellee.

**{¶48}** Three of the statutory factors are applicable here. First, the children do

not interact exceptionally well with appellant during their once-a-week visits. The testimony indicated that appellant cannot control her children and even sometimes requests to end her one-hour visits early. Second, as to the children's custodial history, at the time of the hearing, they had been in appellee's temporary care for the past 19 months. And third, the children have various physical/developmental/emotional issues that seem to make a legally secure placement even more important for them. Two of the children were diagnosed with failure to thrive. B.S. suffers from various developmental delays. D.S. required a colonoscopy. B.S. required a neurological consult. And B.S. and K.S. both are in counseling. These factors all support the trial court's decision to grant permanent custody to appellee.

{¶49} Numerous other factors also support the trial court's judgment.

{¶50} First, appellant did not demonstrate a commitment toward her counseling. Pelleteir testified that appellant attended only half of her 22 scheduled counseling sessions. She stated that once appellant obtained her own transportation her attendance improved. However, appellant's poor overall attendance was not contradicted. And appellant's poor attendance could not be excused in light of the fact that appellee offered her transportation to her counseling sessions.

{¶51} Second, appellant did not demonstrate a commitment toward her children. Despite the fact that appellee sent appellant advance notice of 32 appointments for the children, including counseling sessions, therapy sessions, dental appointments, and medical appointments, appellant attended only seven. This is especially disturbing considering the seriousness of some of the appointments like a colonoscopy for one child and a neurological consultation for another. Additionally, even though appellant's visits with her children were only once a week for one hour, she sometimes asked to end the visits early because she could not control the children.

{¶52} Third, appellant suffers from schizoaffective disorder and mild mental retardation. This causes her to have auditory hallucinations. Her psychologist was

concerned that the "voice" appellant heard could tell her to hurt her children. He also expressed concern that the stress of caring for her children could cause appellant's psychological condition to deteriorate. Furthermore, appellant functions at only a fourth-grade level.

{¶53} Fourth, although appellant completed her parenting classes, both Staaf and Parker testified that appellant took very little away from the classes. Their testimony indicated that while appellant attended all eight classes, she did not actually learn how to implement any of the skills that were taught nor did she gain any insight into the issues with her children. During her visits, the children remained out of control and appellant could not keep them safe or discipline them.

{¶54} The evidence did indicate that appellant loves her children and wants to be with them. However, this alone is not enough to overcome the clear and convincing evidence that it is in the children's best interest that their permanent custody be granted to appellee.

{¶55} Given the above evidence, we cannot conclude that the trial court abused its discretion in granting permanent custody to appellee. Accordingly, appellant's sole assignment of error is without merit.

{¶56} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.